J-S14035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ISAIAH DUNGEE | : | |
| | : | |
| Appellant | : | No. 477 WDA 2021 |

Appeal from the Judgment of Sentence Entered January 28, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006003-2020

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: May 13, 2022**

Isaiah Dungee (Dungee) appeals from the January 28, 2021 judgment of sentence imposed by the Court of Common Pleas of Allegheny County (trial court) following his convictions for simple assault and defiant trespass.[1] Dungee argues that the trial court abused its discretion by denying his post-sentence motion for a new trial on the charge of simple assault based on the weight of the evidence. We affirm.

The trial court summarized the facts of this case as follows:

At trial, the Commonwealth initially called the victim, Champagne Bray, to testify. She identified [Dungee] in court and stated that he was the father of their daughter. [Dungee] arrived at Ms. Bray's residence on March 31, 2020 around 9 pm and started

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2701(a)(1) & 3503(b)(1)(i).

knocking on her door, then kicking on it. [Dungee] wouldn't leave despite numerous requests by Ms. Bray. Eventually, she opened the door and told him to just leave. [Dungee] was rambling saying he wanted to get back together. Ms. Bray kept telling [Dungee] it was over, "you got to go," and "I don't want anything to do with you." [Dungee] grabbed Ms. Bray and then grabbed her neck. He pushed her into a wall, and then into the kitchen where she fell on the floor. Ms. Bray testified that her head was hurting, and she was sore. [Dungee] grabbed Ms. Bray by the wig, pulled it off, and punched her at least four times in the face and arm, all the while choking the victim. Ms. Bray testified that her entire body was sore the next day. She said it hurt to walk or move after she stayed in bed the entire day, while family members came to help tend to her children. She described her pain as an 8 or 9 on a scale of 10. Ms. Bray testified that [Dungee] struck her with a closed fist. When she threatened to call the police, [Dungee] took her phone and squeezed it to the point the victim heard it cracking. [Dungee] kept telling the victim "you're not going nowhere" and kept calling her a "bitch." Ms. Bray testified that she tried to get to the front door and [Dungee] struck her in the back of the head twice. Ms. Bray testified that she tried to leave the house, but was blocked by [Dungee], who continued to strike her. Eventually, Ms. Bray ran from the house with no shoes, and no coat into the pouring rain. [Dungee] chased her, tackled her and continued to punch her. Covered with mud, being punched by [Dungee], Ms. Bray screamed for help.

West Mifflin police officer Christopher Miller testified that he was dispatched to a physical domestic involving the victim and [Dungee] on March 31, 2020. The officer observed multiple scratches to Ms. Bray's arms, legs and bruise to the right shoulder. The victim was upset, screaming for help and her whole body was covered with mud, with blood on her shirt.

The [victim's] god sister, Juanita Jennings, who lived three doors away from Ms. Bray, also testified at trial. Ms. Jennings testified that the victim called her name at least four times and when she looked out her window, [Dungee] had Ms. Bray pinned to the ground, in the mud while he was on top of Ms. Bray. Ms. Jennings went outside and pulled the defendant off Ms. Bray, took her into the house and called 911. Ms. Jennings observed multiple bruises on the victim's body and that Ms. Bray spent the next day in bed.

[Dungee] also testified at trial and denied that he ever struck Ms. Bray or pushed her to the ground. [Dungee] denied ever interacting with Juanita Jennings that night, specifically denying that Ms. Jennings pulled him off the victim.

Having considered the evidence, the court found defendant guilty of simple assault and defiant trespass. The court found the testimony of the Commonwealth's witnesses to be credible, and the testimony of the defendant to be self-serving and incredible.

Trial Court Opinion, 11/18/21, 3-5. Dungee proceeded immediately to sentencing and was sentenced to 9 to 23 months' incarceration on the count of simple assault and no further penalty on the count of defiant trespass.

Dundee filed a timely post-sentence motion challenging the weight of the evidence to support his conviction for simple assault. He argued that Ms. Bray's trial testimony was inconsistent with her preliminary hearing testimony, as she had not previously said that Dungee had choked her during the altercation and she did not tell Officer Miller that Dungee had forced his way into her apartment. He further argued that her estimate that Dundee struck her 30 to 35 times was inconsistent with the photos, her description of her injuries and Officer Miller's observations. He pointed out that she declined to seek medical care and argued that his own testimony that Ms. Bray fell to the ground outside while chasing him was more credible in light of these facts. Finally, he claimed that his candid admission that he was not permitted to be at Ms. Bray's apartment was evidence of his own credibility.

The trial court denied the motion and Dungee timely appealed. He and the trial court have complied with Pa. R.A.P. 1925. Dungee raises one issue

on appeal:  whether the trial court abused its discretion in denying his post-sentence motion for a new trial on the charge of simple assault based on the weight of the evidence.[2]

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted).  "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted).  A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." *Commonwealth*

_____

[2] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013).  An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted).  A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." *Id.* (citation omitted).  Finally, we note that these standards apply to our review of a weight claim even when a trial court, rather than a jury, sits as the finder of fact.  *See Commonwealth v. Konias*, 136 A.3d 1014, 1023 (Pa. Super. 2016).

*v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Akhmedov*, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

Dungee argues that the trial court abused its discretion in denying his motion because Ms. Bray's description of the extensive attack was so inconsistent with the physical evidence and the observations of Officer Miller that it rendered her testimony entirely unreliable. He contends that it should have shocked the trial court's sense of justice that Ms. Bray testified to being struck 30 to 35 times on the head, but she declined medical attention and the photographs taken the day after the attack showed only minor cuts and bruises.[3] Citing **Commonwealth v. Woong Knee New**, 47 A.2d 450, 468 (Pa. 1946), he argues that this evidence was equally consistent with his version of events, rendering the finding of guilt against the weight of the evidence.

_____

[3] The photographs, which the Commonwealth entered into evidence in its case-in-chief, were not transmitted with the certified record to this Court on appeal. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Holston**, 211 A.3d 1264, 1276 (Pa. Super. 2019) (citation omitted). We could deem this argument waived on this basis. *Id.* at 1277. However, because the descriptions of the photographs in the notes of testimony are undisputed and provide sufficient information for our review of Dungee's claim, we decline to find waiver.

In rejecting this claim, the trial court concluded that Ms. Bray was credible and Dungee's testimony was incredible and self-serving. For the charge of simple assault, the Commonwealth was required to prove that Dungee "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury" to Ms. Bray. 18 Pa.C.S. § 2701(a)(1). Here, Ms. Bray testified that Dungee struck her numerous times on her head, choked her and chased her outside and tackled her. This testimony was corroborated by Ms. Jennings, who saw Dungee pinning Ms. Bray to the ground after the assault and observed her injuries, and Officer Miller, who saw bruises and scratches on Ms. Bray when he responded to the scene. Ms. Bray additionally provided photographs of her injuries taken the following day. The trial court was entitled to view all of this evidence and conclude that Dungee had, in fact, caused bodily injury to her during the assault, and we may not reweigh this evidence on appeal to come to a contrary conclusion. **Clay**, **supra**. In light of this evidence, we conclude the trial court did not abuse its discretion in holding that the verdict of guilt was not so contrary to the evidence as to shock one's sense of justice. **Olsen**, **supra**. Dungee is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2022